UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL WILLIAM
BENTLEY,

        Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

        Defendant.

_____/

Civil Action No.: 16-11314
Honorable Denise Page Hood
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 11, 12]**

Plaintiff Michael William Bentley appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 12] be **GRANTED**;

- Bentley's motion [ECF No. 11] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

I.   **BACKGROUND**

   A.   **Bentley's Background and Disability Applications**

Born March 15, 1966, Bentley was 46 years old when he submitted his applications for disability benefits in August 2013. [ECF No. 8-5, Tr. 188]. He has a four-year college education and past work experience as a pharmacist. [ECF No. 8-6, Tr. 218-25]. Bentley alleges a disability onset date of January 24, 2013, and that he is disabled by bipolar disorder, manic depression, anxiety, panic, memory problems, high blood pressure, atrial fibrillation, and thyroid issues. [ECF No. 8-3, Tr. 107].

After the Commissioner denied both disability applications initially, Bentley requested a hearing, which took place on April 8, 2015, during which he and a vocational expert (VE) testified. [R. 8-2, Tr. 70-106]. In a May 8, 2015, written decision, the ALJ found Bentley to be not disabled. [*Id.*, Tr. 62]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Bentley timely filed for judicial review. [*Id.*, Tr. 1-7; ECF No. 1].

### B. The ALJ's Application of the Disability Framework Analysis

DIB is available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work.

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

3

*Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Bentley was not disabled. At the first step, he found that Bentley had not engaged in substantial gainful activity since his alleged onset date. [ECF No. 10-2, Tr. 53]. At the second step, he found that Bentley had the severe impairments of "affective disorder, anxiety disorder, hypertension." [*Id.*]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 53-55].

Between the third and fourth steps, the ALJ found that Bentley had the RFC to perform a full range of work at all exertional levels but with nonexertional limitations:

> He can never climb ladders, ropes or scaffolds; never be around work place hazards such as large moving machinery and exposure to unprotected heights. He must work in jobs with only occasional decision-making and only occasional changes in the work setting. The work is limited to simple, routine, repetitive tasks and the work environment must be free of fast-paced production. He can have only occasional interaction with the public and only occasional interaction with

4

> coworkers. He would require supervision where the person checks the persons work one to two times a year.

[ECF No. 8-2, Tr. 55]. At step four, the ALJ found that Bentley was unable to perform any past relevant work. [*Id.*, Tr. 60]. With the assistance of VE testimony, the ALJ determined at step five that Bentley could perform occupations such as dishwasher, stock handler, and laundry worker, and that those jobs existed in significant numbers in the economy, rendering a finding that he was not disabled. [*Id.*, Tr. 61].

## II. ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

5

Bentley argues that the ALJ erred by failing to give controlling weight to the opinion of his treating physician, David J. Freestone, MD, and by failing to find Bentley fully credible. The Court disagrees and recommends that the ALJ's decision be affirmed.

**B.**

Bentley argues that the ALJ erred by not giving controlling weight to the opinion of Dr. Freestone. The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 727-29; *Rogers,* 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.* An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the

6

adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).  This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted).  Courts will not hesitate to remand when the ALJ failed to articulate "good reasons" for not fully crediting the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

Dr. Freestone saw Bentley in January 2013, when he presented with bipolar disorder.  [ECF No. 8-7, Tr. 321].  Dr. Freestone found Bentley to have depression, an inability to concentrate, mood changes, and an anxious mood and affect, but also found him "alert and oriented x3 with no impairment of recent or remote memory." [*Id.*].  His findings were similar in a visit the next month. [*Id.*, Tr. 320].  In March, Dr. Freestone found that Bentley had no impairments in the areas of word repetition, attention, concentration, problem solving, or short term memory. [*Id.*, Tr. 318].  In April, June, and July, Dr. Freestone saw Bentley and made findings similar to those previously made, finding him to be at times hypomanic, anxious,

7

and with racing thoughts, but with no impairment of recent or remote memory. [*Id.*, Tr. 314-16, 317, 460].

In August 2013, Bentley filed for disability benefits. [ECF No. 8-5, Tr. 188]. Later that month, he met with Dr. Freestone again, who wrote in a report, "Spoke to Jan Woodcock SW 6/12/13—patient does not have coping mechanism to work in such a stressful work environment and needs a new work environment or disability." [ECF No. 8-7, Tr. 457]. It is unclear whether this opinion was that of Dr. Freestone, Woodcock, or both. But in January 2014, Dr. Freestone opined in a letter to plaintiff's counsel that Bentley "is clearly not able to concentrate enough to count medications and dispense them in a safe manner," and that "I do not feel that he is able to work on other jobs because he is only able to concentrate for a very few minutes at a time, and when there is any sort of stress or other things going on he has some more difficulties." [*Id.*, Tr. 396-97].

Dr. Freestone also answered a "multiple impairment questionnaire" on which he opined that Bentley could not do any "job which requires concentration for more than a few minutes." [*Id.*, Tr. 388]. He opined that Bentley had a level of fatigue of "6/10" due to medication side effects, cannot sit, stand, or walk more than one hour per day, cannot tolerate even low levels of work-related stress, would need unscheduled breaks over ten

8

times per day, and would be absent from work over three times per month due to his impairments. [*Id.*, Tr. 390, 392-94]. Dr. Freestone also signed off on a questionnaire answered by Bentley's social worker, Woodcock, which stated that Bentley had a poor prognosis and was markedly limited in most listed capacities. [*Id.*, Tr. 398, 401-03]. According to the questionnaire, Bentley was overstimulated at work on a daily basis, resulting in "full blown manic episodes," could "no longer function at all in his high stress job, due to the high skill required and no room for errors," and "struggled for years to come to [the] decision to seek disability," much preferring to continue working if able. [*Id.*, Tr. 403, 405].

In February 2014, Dr. Freestone found that Bentley's stress levels, racing thoughts, and concentration were worsening, but still opined that he was "alert and oriented x3 with no impairment of recent or remote memory." [*Id.*, Tr. 451]. Subsequent visits to Dr. Freestone had similar results, and in April 2015, Dr. Freestone answered another questionnaire, diagnosing Bentley with "bipolar disorder manic," with a GAF score[2] of 55-60. [*Id.*, Tr.

---

[2] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning." *Norris v. Comm'r of Soc. Sec.,* No. 11–5424, 461 F.App'x 433, 436 n. 1 (6th Cir. 2012) (citations omitted).

503]. Dr. Freestone explained that Bentley's manic and anxiety symptoms were his most frequent and severe symptoms, and opined that Bentley was unable to work since January 2013 due to these symptoms. [*Id.*, Tr. 505]. He found almost all of the listed mental activities on the form to be markedly limited, opining once again that Bentley would be absent from work more than three times per month and is unable to work. [*Id.*, Tr. 506].

      The ALJ considered all of the aforementioned opinion evidence from Dr. Freestone, but found that it was entitled to only partial weight due to its "inconsistency with other substantial evidence in the case record." [ECF No. 8-2, Tr. 58]. The ALJ agreed with Dr. Freestone that Bentley may not be able to return to his past work and had some limitations, but found that Dr. Freestone's "severe limitations" of Bentley being absent from work three or more times per month and only being able to sit, stand, or walk for at most one hour were not supported by the record. [*Id.*, Tr. 58-59]. He also noted that Dr. Freestone found Bentley able to "speak back a phrase, able to do serial sevens, and able to repeat 3 of 4 items after 5 minutes." [*Id.,* citing ECF No. 8-7, Tr. 318]. Indeed, in the same record, which was from March 2013, Dr. Freestone found Bentley to have no impairments of naming, word repetition, attention, concentration, problem solving, or short term memory. [*Id.*].

Bentley argues that Dr. Freestone's opinion is entitled to controlling weight and cites treatment notes that he claims are consistent with Dr. Freestone's opinions. [ECF No. 11-2, PageID 599-600, citing ECF No. 8-7, Tr. 318, 321, 351, 353, 363, 451, 460, 486, 487 and 497]. But many of the records he cites were not from Dr. Freestone, [ECF No. 8-7, Tr. 351, 353, 363, 486, 487, 497], and the records he cites from Dr. Freestone did not evidence the examination findings Bentley cites, [*id.*, Tr. 318, 321, 451, 460]. In fact, as noted, Dr. Freestone wrote in March 2013 that Bentley needed disability *or* a lower stress work environment. [*Id.*, Tr. 451]. And Bentley does not explain how any of the treatment records he cites support Dr. Freestone's restrictions on his ability to maintain attendance, sit, stand, walk, or work without interruption; he simply asserts in a conclusory manner that the cited records are consistent with the deficiencies that Dr. Freestone alleged.

Further, this Court's review of the records reveals that his opinions regarding Bentley's memory issues are largely contradicted by Dr. Freestone's own records and others; almost every record regarding Bentley's memory shows no impairment. [ECF No. 8-7, Tr. 318, 320, 321, 357-65, 451, 460, 476-78, 479-80, 481-82, 483-84]. These inconsistencies

11

provide substantial evidence in support of the ALJ's decision to not give controlling weight to Dr. Freestone's opinion.

Bentley argues that even if Dr. Freestone's opinion does not demand controlling weight, it is still entitled to deference and must be weighed appropriately considering the factors promulgated by 20 C.F.R. § 404.1527(c). Weighing those factors, it is true that Dr. Freestone directly treated Bentley for a significant period of time, but his opinions lack consistency and support from the objective medical record and Dr. Freestone is not a mental health specialist—these latter factors weigh against giving the opinions such deference. Bentley cites *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989), as recognizing that psychiatric impairments are "not as readily amenable to substantiation by objective laboratory testing as medical impairment," so courts should afford deference to the "diagnosis and observations of professionals trained in the field of psychopathology." *Id.* at 1121 (citation and internal quotation marks omitted). But Dr. Freestone is a family medicine doctor, [ECF No. 11-2, PageID 584 n. 3], and much of what he opined does not appear to have been derived from his own observations.

Bentley argues that the ALJ "suggested" that he relied upon the opinion of Judy Strait, Psy.D., which he alleges was error because Dr.

12

Strait was a non-examining state agency source who did not review the entire record. [ECF No. 11-2, PageID 598, 601-02]. Yet, while the ALJ summarized Dr. Strait's findings, he did not assign her opinion any particular weight. [ECF No. 8-2, Tr. 59-60, citing ECF No. 8-3, Tr. 110-17]. It is true that, when an ALJ gives greater weight to a non-examining source who did not review the complete record, the ALJ must give some indication that he considered that fact. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016). But again, the ALJ did not assign greater weight to Dr. Strait's opinion than to Dr. Freestone; the ALJ accorded Dr. Freestone's opinion partial weight and fully considered his treatment records. The ALJ agreed with Dr. Freestone and social worker Woodcock that Bentley was severely impaired and unable to return to his previous high stress work. But there is no evidence that he attempted to work in other fields, or that he had symptoms that would interfere with careers that met his RFC, namely ones in which the environment is simple, routine, and repetitive, with only occasional decision-making, changes in the work setting, and interaction with others. Bentley has failed to show that he could not work within this RFC.

**B.**

Bentley challenges the ALJ's determination that he was only partially credible. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. An ALJ must explain the bases of her credibility determination, and the reviewing court should not be left to speculate as to the grounds for the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015). "[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Here, the Court finds that the ALJ's credibility determination was supported by substantial evidence.

Regarding Bentley's credibility, the ALJ found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." [ECF No. 8-2, Tr. 57-58]. The ALJ reasoned that Bentley's lifestyle was inconsistent with complete disability due to his ability to perform

14

household chores, prepare meals, shop, drive, ride a bike four-to-five times per week, kayak two-to-three times per month, and take care of his personal hygiene. [*Id.*, Tr. 58, citing ECF No. 8-6, Tr. 226-38]. He also noted "inconsistent statements" from Bentley, in that he testified that he had not worked since January 2013 when the record reflects a brief return to work in March 2013, and in reporting being anxious when leaving the home, but having travelled to Florida and Chicago. [*Id.*]. He concluded, "Although Mr. Bentley may not consciously have intended to mislead, I conclude that these factors negatively erode his credibility." [*Id.*].

     Bentley argues that the ALJ overstated his abilities and that his actual abilities are not inconsistent with a finding of disability. He did testify that his driving is somewhat limited, that he has difficulty attending his children's events due to the crowds, and that he only occasionally goes out to eat and only when he can sit with his back to other people. [ECF No. 11-2, PageID 607-08, citing ECF No. 8-2, Tr. 77, 87-88]. But Bentley's argument fails because the RFC does not require Bentley to drive or handle crowds, and only occasionally requires interaction with the public or coworkers.

     Bentley also cites to a number of out of circuit cases supporting the contention that a mentally ill person with similar daily activities can still be found disabled. [ECF No. 11-2, PageID 606-07]. In response, the

Commissioner points to a similar case within this circuit in which the plaintiff suffered from bipolar disorder and exhibited symptoms of depression and anxiety, and was found to be not disabled based on her ability to "attend to personal care tasks, prepare simple meals, perform some household chores (including washing dishes, vacuuming, sweeping, and doing laundry), and generally care for her children."  *Robinson v. Comm'r of Soc. Sec.*, No. 13-CV-13124, 2014 WL 4145339, at *7-8 (E.D. Mich. Aug. 20, 2014).

Furthermore, while Bentley argues that it was reasonable for him to not consider his brief return to work in March 2013 as his last date worked, the ALJ is entitled to great deference in assessing Bentley's credibility given his responsibility to observe and assess Bentley's demeanor and credibility.  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).  Another ALJ may not have found this testimony significant, but that is not a compelling reason to reverse the ALJ's conclusion here that Bentley's testimony about when he last worked eroded his credibility.

### III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 12] be **GRANTED**; that Bentley's motion [ECF No. 11] be **DENIED**; and the ALJ's decision be **AFFIRMED** pursuant

to sentence four of 42 U.S.C. § 405(g).

Dated: July 24, 2017

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to

17

the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 24, 2017.

                                       s/Marlena Williams
                                       MARLENA WILLIAMS
                                       Case Manager